OPINION
{¶ 1} Plaintiffs-appellants, Jacalynn M. and J. Anthony Garrido, appeal from the May 14, 2003 judgment of the Franklin County Court of Common Pleas entering judgment on the pleadings for defendants-appellees, Empty Nester Homes ("Empty Nester") and Ronald Huff. For the reasons that follow, we affirm.
 {¶ 2} The following facts are taken from the complaint. On or about November 24, 1998, the parties entered into a Lease and Option to purchase real property located at 1537 Carlton Way, Blacklick, Ohio. The term of the lease was for the period beginning January 1, 1999 and ending on December 31, 2000. Appellants resided at the property and made payments of $2,500 per month.
 {¶ 3} According to the agreement, if appellants exercised the option to purchase, they would receive credit toward the purchase price in the amount of one-half of the base rent paid to Empty Nester. The purchase price of the house was set at $325,000.
 {¶ 4} Appellants did not exercise the option during the term of the lease, but continued to occupy the premises and pay rent. According to the complaint, appellants believed themselves to be month-to-month tenants subject to the same terms and conditions in the original lease including the option to purchase. Appellants also stated that they believed themselves to be holdover tenants subject to the same terms and conditions outlined in the original agreement. In their amended complaint, appellants claimed that they believed themselves to be tenants under a renewed lease term that was subject to the same terms and conditions found under the original agreement, including the option to purchase.
 {¶ 5} On or about April 22, 2001, Empty Nester proposed a new lease agreement for a term of one year that did not include an option to purchase. Appellants refused to sign the new lease and submitted a re-executed copy of the original lease that contained handwritten changes. On or about June 24, 2002, appellants delivered written notice to Empty Nester that they were exercising their option to purchase. On or about June 28, 2002, Empty Nester rejected appellants' offer to purchase. On or about July 1, 2002, Empty Nester notified appellants that it was terminating the month-to-month tenancy effective July 31, 2002.
 {¶ 6} On July 3, 2002, appellants filed suit for specific performance and breach of contract. They sought monetary damages and declaratory relief. Appellees filed an answer and a counterclaim on September 11, 2002. Appellants filed an answer to the counterclaim on October 8, 2002. Also on October 8, 2002, appellants filed a motion for leave to amend the complaint. The trial court did not rule on the motion, but appellees filed an answer to the amended complaint on December 8, 2002. On January 10, appellees filed a motion for judgment on the pleadings. Appellants responded with a memorandum contra on January 24, 2003, and their own motion for judgment on the pleadings on February 6, 2003.
 {¶ 7} The trial court granted appellees' motion for judgment on the pleadings in a decision and entry dated March 17, 2003. The trial court entered final judgment on May 14, 2003.
 {¶ 8} Appellants filed a timely notice of appeal, assigning as error the following:
ASSIGNMENT OF ERROR 1: Judgment of the Court granting Defendants' Motion for Judgment on the Pleadings is against the manifest weight of the evidence. The Court ruled that the Plaintiffs were month-to-month tenants. The evidence shows that Plaintiffs were not month-to-month holdover tenants, but tenants under a renewed Lease Term. The Lease Term was renewed through Defendants' conduct of continually accepting rent upon the expiration of the original Lease Term.
ASSIGNMENT OF ERROR 2: In granting Defendants' Motion for Judgment on the Pleadings, the Court failed to address Plaintiffs' Equity Claim for Money Damages in the Complaint. Plaintiffs made double payments for four years with the understanding that one-half (1/2) of such payment would be for rent and the other one-half (1/2) would go towards the purchase price of the house. Plaintiffs overpaid $60,000.00 during the course of four years and, at a minimum, equity entitles them some repayment of funds.
 {¶ 9} In their first assignment of error, appellants argue that they are holdover tenants governed by the same terms and conditions as the original lease, including the option to purchase. Thus, appellants claim that under the renewed lease they had a right to exercise the option to purchase, and the judgment in favor of appellees should be reversed.
 {¶ 10} A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law. Fontbank, Inc. v. CompuServe,Inc. (2000), 138 Ohio App.3d 801, 807, appeal not allowed,90 Ohio St.3d 1493. In reviewing the trial court's decision to grant such a motion, this court conducts a de novo review of the legal issues without deference to the trial court's determination. Id. Dismissal of a complaint is appropriate under Civ.R. 12(C) where, construing all material allegations in the complaint along with all reasonable inferences drawn therefrom in favor of the plaintiff as the nonmoving party, the court finds the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Id., citing State ex rel. Midwest PrideIV, Inc. v. Pontious (1996), 75 Ohio St.3d 565, 570.
 {¶ 11} A holdover generally is "based upon an implied agreement, and indicates on the part of the tenant that he intends to continue the relationship." Palevsky v. Bentfield
(1933), 46 Ohio App. 385, 387. In general terms, a holdover occurs when a tenant maintains possession or occupancy of the premises past the expiration date of the lease agreement. SeeBumiller v. Walker (1917), 95 Ohio St. 344; Steiner v.Minkowski (1991), 72 Ohio App.3d 754, 762. "In Ohio, a tenant who holds over after the term of his lease expires is a tenant at sufferance." Craig Wrecking Co. v. S.G. Lowendick Sons, Inc.
(1987), 38 Ohio App.3d 79, 81. "As such, the landlord may elect to treat the tenant as a trespasser, or hold him to a new lease term. * * * When a tenant holds over beyond the lease term and pays rent according to the former terms, the law implies a contract on the tenant's part to hold over for an additional term under the same conditions which governed the prior term. * * * Although such the presumption is rebuttable, the new term may arise from the conduct of the parties regardless of the intentions of the tenant alone. * * * The election to hold the tenant to a new term lies with the landlord and his acceptance of rent implies an election to treat the tenant as a holdover. * * * Absent any agreement to the contrary, the new lease term is governed by the provisions of the original lease." (Citations omitted.) Id.
 {¶ 12} Here, we note that the original lease contained the following provision:
8. OPTION TO RENEW. Should Tenant choose not to exercise the Option [to purchase], as defined in Paragraph 6, on or before the Termination Date, Tenant and Landlord may agree to renew this Lease on the same terms and conditions. This Lease shall not automatically renew on the Termination Date.
 {¶ 13} Given the facts alleged on the record before us, appellants were holdover tenants since they continued to occupy the premises after the expiration of the lease and made lease payments which were accepted by Empty Nester. Because appellants were treated as holdover tenants by Empty Nester, there is a rebuttable presumption that the terms of the implied lease are those to which the parties had earlier explicitly agreed. SeeCraig Wrecking Co., at 81-82.
 {¶ 14} At this stage of the proceedings, the question then becomes whether the option to purchase remained a term of the implied lease. In Ahmed v. Scott (1979), 65 Ohio App.2d 271,277, the Lucas County Court of Appeals determined that holdover tenants have no legal right to assert an option to purchase the real estate during the period they occupy as holdover tenants. "A lease and its written option to purchase, contained therein, are independent contracts and, therefore, option to purchase cannot be exercised during holdover period." Id. Appellants attempt to distinguish Ahmed on the grounds that the lease in Ahmed had a provision that indicated without express notice a tenancy from month-to-month is automatically created. However, regardless of whether appellants were holdover tenants on a month-to-month basis or for a term of one or two years, the lease and the option were independent of each other. Therefore, appellants were not legally entitled to exercise the option to purchase during the holdover period, regardless of whether it was a month-to-month tenancy, or a tenancy for a term of years. The first assignment of error is not well-taken.
 {¶ 15} In their second assignment of error, appellants contend that, as a matter of equity, they are entitled to a refund of half the money they paid as rent which they characterize as money paid towards a down payment on the property. We disagree.
 {¶ 16} The lease attached to appellants' complaint is clear and unequivocal. The base rent was set at $2,500 per month, and there was no agreement between the parties that there would be any refund of rent. The only provision the parties agreed to was that in the event appellants exercised the option, one-half the base rent would be credited towards the purchase price at the closing. Since appellants did not exercise the option during the time period in which they could have, there can be no credit for one-half the rent. The second assignment of error is not well-taken.
 {¶ 17} Based on the foregoing, appellants' two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed. Appellees' motion, pursuant to App.R. 23 for attorney fees and costs, is denied as we find the appeal was not frivolous.
Judgment affirmed; motion for attorney fees and costs denied.
KLATT and BROWN, JJ. concur.