OPINION
This is an accelerated calendar appeal from the Warren Municipal Court. Appellants, John Simondis and Ann Simondis,[1] appeal from the trial court's judgment in favor of appellee, Randolph N. Jones, in the amount of $60.[2]
The case at bar involves a dispute between appellants-defendants-landlords and appellee-plaintiff-tenant. Appellants and appellee entered into a written rental application and agreement on February 15, 1995, establishing a month-to-month tenancy.[3] A security deposit of $625 was paid. Rent was due prior to the fifteenth day of each month, starting with March 15, 1995.
Rent was paid by appellee for the period of November 15 to December 14, 1996. Appellee gave telephonic notice to appellants on December 6, 1996, indicating his intent to move from the premises on December 14, 1996. Appellee returned the keys to appellants on December 16, 1996. No rent or utility payments were paid after December 14, 1996. Appellants provided an itemized list to appellee, pursuant to R.C. 5321.16(B).
On February 21, 1997, appellee filed a complaint "alias-reg." in small claims court,[4] praying for judgment in the amount of $710[5] including a security deposit of $625, plus court costs, plus $40 for overpayment of damages relating to a damaged door and a porch light. According to the magistrate's report, appellee subsequently conceded that he had not given proper notice, and amended his claim to include a request for only $100 in damages, and court costs.
On March 3, 1997, appellants filed an answer, and a counterclaim. In their answer, appellants contended that appellee had violated the landlord-tenant law by failing to give thirty-day notice of his intent to terminate the tenancy, and had failed to include necessary parties in his complaint. The damages sought in the counterclaim were calculated as follows: (1) $625 for rent from December 15, 1996 to January 14, 1997 and $625 for rent from January 15, 1997 to February 14, 1997; (2) utilities in the amount of $181.64; (3) $205, representing the balance of the amount due for damages to the side door and porch light of the structure; and (4) a $625 credit for the security deposit, for a total of $1,011.64, plus costs and interest.
The magistrate conducted a hearing on March 26, 1997, and rendered judgment for appellee in the amount of $60. The magistrate observed that appellee did not give appellants the required thirty-day notice, pursuant to R.C. 5321.17(B) and, thus, determined that appellee owed appellants $625 in rent for the period from December 15, 1996 to January 15, 1997. The magistrate also found that since the tenancy was only from month-to-month, appellee was not responsible for any rent after January 15, 1997, nor was he responsible for any utilities after he vacated the premises. The magistrate further determined that the door had been blown off its hinges by wind, that appellee did not willfully or negligently damage the door, and that appellee was not responsible for damages "as it was an act of God." The magistrate also found that the cost for the light fixture was $83.68.
The magistrate then calculated the damages in the following manner. He first subtracted the security deposit amount, $625, from the rent due from December 15, 1996 to January 15, 1997, $625, and achieved a balance of $0 with respect to the rental element of the damages calculation. Next, he stated that appellee had paid appellants $143.68 for the light fixture, subtracted the actual cost of the fixture, $83.68, and held that a credit balance of $60 was due appellee. The magistrate concluded by stating that absent the amount owed for December 15, 1996 to January 15, 1997 rent, and the amount owed for the light fixture, no other money was owed by appellee to appellants. The magistrate then dismissed appellants' counterclaim.
The trial court adopted the magistrate's findings of fact and conclusions of law in a judgment entry filed on March 31, 1997.[6] Appellants timely appealed, and submit the following assignments of error:
 "[1.] The trial court erred in denying payment to [appellants] of damages (rents and utilities) until the property rerented because [appellee], failed to give the statutory minimum 30 day notice, violated [his] codified duty to provide the landlords in writing [his] forwarding or new address, [and] violated provisions of the rental agreement[,] all contrary to the doctrine of `avoidable consequences'.
 "[2.] The trial court's denial of [appellants'] full recovery of waste damages contractually agreed to with [appellee] was against the manifest weight of evidence and case law.
 "[3.] The trial court's dismissal of [appellants'] legally filed counter claim constitutes [an] abuse of discretion in view of the testimony of [appellee] admitting to the violations of the tenant-landlord code, was against the manifest weight of evidence and involves misinterpretation of law."
Since appellants' first, second, and third assignments of error are interrelated, we will consider them in a consolidated manner. Upon review, we determine that appellants' assignments of error are without merit.
Appellants allege that the findings of fact and conclusions of law are against the manifest weight of the evidence, but appellants did not timely file objections to the magistrate's decision. Furthermore, appellants did not submit a transcript or an affidavit of the evidence to the trial court, or to this reviewing court. Civ.R. 53(E)(3)- (4) provides, in relevant part:
"(3) Objections.
 "(a) Time for filing. Within fourteen days of the filing of a magistrate's decision, a party may file written objections to the magistrate's decision. * * *
 "(b) Form of objections. Objections shall be specific and state with particularity the grounds of objection. * * * Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.
"(4) Court's action on magistrate's decision.
 "(a) When effective. The magistrate's decision shall be effective when adopted by the court. The court may adopt the magistrate's decision if no written objections are filed unless it determines that there is an error of law or other defect on the face of the magistrate's decision."
If an appellant does not object to the factual findings of the magistrate by filing objections to the magistrate's decision, then the appellant may not challenge the court's adoption of the magistrate's factual findings on appeal. Civ.R. 53(E)(3)(b). See, also, Aurora v. Sea Lakes, Inc. (1995), 105 Ohio App.3d 60,66.[7] "Civ.R. 53(E)(3)(b) * * * also precludes the assigning as error [of] any conclusion of law absent an objection."Stafinsky v. Stafinsky (1996), 116 Ohio App.3d 781, 785, fn. 3. A party's failure to object to a matter contained in a magistrate's decision is considered a waiver of his or her right to argue the issue on appeal. Zumock v. Zumock (Sept. 26, 1997), Portage App. No. 96-P-0180, unreported, at 3. Thus, appellants' failure to object to the magistrate's factual findings is alone dispositive of the arguments in their assignment of error. SeeStafinsky at 785.
Moreover, "if the objecting party does not submit the required transcript or affidavit, he cannot argue on appeal that the factual findings were against the manifest weight of the evidence. See, e.g., In re Rhoads (Feb. 4, 1994), Geauga App. No. 93-G-1763, unreported." Belock v. Belock (Mar. 25, 1994), Geauga App. No. 92-G-1748, unreported, at 4. If the complaining party does not submit the transcript or affidavit, then that party is precluded from arguing the factual determination on appeal and waives any claim that the trial court erred in adopting the magistrate's factual finding. Pawlowski v. Pawlowski (Aug. 22, 1997), Lake App. No. 96-L-144, unreported, at 4.
"When a party objecting to a referee's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the referee's report[.]" State ex rel. Duncan v. Chippewa Twp. Trustees
(1995), 73 Ohio St.3d 728, 730. Pursuant to Civ.R. 53(E)(4)(a), the trial court "may adopt the magistrate's decision if no written objections are filed unless it determines that there is an error of law or other defect on the face of the magistrate's decision."
After reviewing the record, it is our opinion that the magistrate's findings of fact and conclusions of law are justified based on the facts and partial testimony cited by the magistrate in his decision. Further, the magistrate's conclusions of law comport with the applicable statutory and case law. Accordingly, the trial court's adoption of the magistrate's factual findings and legal conclusions was appropriate.
In our opinion, the magistrate correctly calculated the damages, pursuant to R.C. 5321.16(B), based on his finding that appellee's eight-day notice did not comply with the thirty-day notice requirement set forth in R.C. 5321.17(B). When a month-to- month tenant fails to give a landlord the required thirty-day notice, as required by R.C. 5321.17(B), the landlord may apply the tenant's security deposit to the amount of rent due. Bowman v.Community Mgt. Corp. (1984), 14 Ohio App.3d 31, 32-33. This type of set-off mechanism was accomplished by the magistrate in the instant case. Appellee sought the return of his security deposit through his original claim. Appellants sought rent for the period from December 15, 1996 to January 14, 1997, as their statutorily proscribed compensation for insufficient notice of intent to vacate the premises under R.C. 5321.17(B). The magistrate subtracted the security deposit amount, $625, from the rent due, $625, and achieved a balance of $0 with respect to the period from December 15, 1996 to January 14, 1997.
Appellants argue that they are nevertheless entitled to rent for the period from January 15, 1997 to February 14, 1997, because the keys were returned on December 16, 1996, two days after the end of the periodic rental date of December 14, 1996. Appellants contend that since the security deposit was applied to the rent due from December 15, 1996 to January 14, 1997, and if that term is construed as the required statutory notice term, then appellants argue that rent is also due for the next rental period of January 15, 1997 to February 14, 1997, since the premises were abandoned. With regard to the utilities that accrued after appellee moved from the premises, in the amount of $181.64, appellants claim that the monthly rental payment of $625 was "not a gross rent that included utilities as it is in many apartments." The lease agreement indicates that appellee was responsible for paying the utilities.[8] Consequently, appellants assert that the trial court had no basis in law or fact not to award them the cost of utilities due to appellee's breach of the statute and the lease.
These issues turn on whether the magistrate properly decided that appellee was not a holdover tenant. This court has held that "[a] tenant is responsible to the landlord for rent beyond the lease term where he retained the keys to the premises. Peters v.Durroh (1971), 28 Ohio App.2d 245." Griffin v. Currie (Nov. 25, 1988), Trumbull App. No. 4065, unreported, at 6. In Griffin the keys were turned in two days after the expiration of the lease term.
In Pyros v. Gould, Inc. (May 6, 1993), Cuyahoga App. No. 61999, unreported, at 4, 1993 WL 146639, the court stated:
 "It is well established that when a tenant, after the expiration of the term of a lease, holds over into another term without any new agreement or arrangement with the landlord, the latter may treat him as a tenant for another term at the same rent and upon the terms and conditions of his occupancy or, as a trespasser at his election. Baltimore Ohio Railroad Co. v. West (1897), 57 Ohio St. 161, 165; Bumiller v. Walker (1917), 95 Ohio St. 344; Palevsky v. Bentfield (1933), 46 Ohio App. 385; Smith v. Gulf Refining Co. (1937), 57 Ohio App. 73; Craig Wrecking Co. v. S.G. Lowendick Sons, Inc. (1987), 38 Ohio App.3d 79; Andrix v. Madison Landmark, Inc. (Dec. 21, 1987), Madison App. No. CA87-04-09; and Petropoulos v. Clinical Pathology Facility, Inc. (Feb. 18, 1988), Franklin App. No. 87AP-685, unreported. The election is solely that of the landlord. In West, supra, the Ohio Supreme Court stated:
 "`Very slight acts on the part of the landlord, as a short lapse of time, are sufficient to conclude his election and make the occupant his tenant. But the tenant has no such election; his mere continuance in possession fixes him as a tenant for another year, if the landlord thinks proper to insist upon it. And the right of the landlord will not be affected by the fact that the tenant refused to renew the lease, and gave notice that he had hired other premises.'
 "Id. at 166-67; see, also, Bumiller, supra, paragraphs one and four of the syllabus; Smith, supra, paragraph two of the syllabus; but, see, Palevsky, supra. The theory of holding over is never permitted to operate against the clear intention of the parties. Smith, supra, at 74; Petropoulos, supra, at 11-12. There must be some evidence that the landlord acquiesced in the tenant's holding over. West, supra." (Emphasis added.)
In Fenell v. Mayflower Manor Apts. (Nov. 29, 1995), Summit App. No. 17224, unreported, at 2, 1995 WL 699919, the court stated:
 "* * * The referee found that Fenell notified Mayflower on September 4[,] of his intention to move. Clearly, this notice was insufficient to terminate the tenancy as of September 1. Additionally, the referee found that Fenell remained in the apartment until September 12. `In Ohio, a tenant who holds over after the term of his lease expires is a tenant at sufferance. (* * *) As such, the landlord may elect to treat the tenant as a trespasser, or hold him to a new lease term.' Craig Wrecking Co. v. S.G. Loewendick Sons, Inc. (1987), 38 Ohio App.3d 79, 81. Here, then, Mayflower could elect to hold Fenell to an additional term of one month because Fenell held over after the term of his lease had expired."
Due to appellants' failure to supply a transcript, or other suitable alternative, we are limited in our review regarding the table of evidence before us to those facts set forth in appellants' statement of facts in their brief, and those findings contained in the magistrate's decision. This parameter of evidence does not contain any factual findings regarding the intent of appellee or appellants regarding the establishment of a new lease term for January 15, 1997 to February 14, 1997. However, the fact that appellee notified appellants of his intent to vacate the premises is an indication that there was no intent on the part of appellee to continue the lessee-lessor relationship. Palevsky at 388. Additionally, there is no evidence in the record that appellants acquiesced in appellee's alleged holding over, or that appellants affirmatively elected to treat appellee as a holdover tenant. In our view, this case is distinguishable from Fenell because the court in that case determined that the tenant affirmatively held over twelve days into the next rental period, whereas here appellee's notice was sufficient to curtail any additional liability for the period from January 15, 1997 to February 14, 1997. We conclude that the magistrate's decision that appellee did not owe appellants rent or utilities from January 15, 1997 to February 14, 1997, is supported by the record.
Appellants rely on Briggs v. MacSwain (1986), 31 Ohio App.3d 85, in support of their position. In Briggs, the court noted that "the issuance of three-day notice to vacate pursuant to R.C.1923.04 does not terminate the obligations of the tenant to the landlord to pay rent for the remainder of the term or until a new tenant is secured in the exercise of reasonable diligence, whichever is earlier." Id. at 86. The Briggs court further observed that:
 "* * * A tenant may not avoid her obligations under the lease agreement for payment of the rent during the term of the lease, or until a new tenant is secured, by failing to pay rent and then vacating after she receives the required three-day notice for non-payment of rent." Id.
However, the Briggs factual scenario, involving an eviction in the middle of a lease term for nonpayment of rent, is inapposite to the situation here where the lease term had already expired, and the prior rental payments had in fact been made. Here, the pertinent issue is whether the tenant, by holding over, is a tenant at sufferance, which tenancy by its very nature involves a tenancy after the expiration of the lease term.
We also note that abandonment is not applicable here because that action involves a surrender of the leased premises by the tenant prior to the expiration of the lease term, not after the expiration of such term. See, e.g., Sandusky Mall Co. v. PetCorner, Inc. (Jan. 15, 1997), Mahoning App. No. 95 C.A. 28, unreported, 1997 Ohio App. LEXIS 181. Holding over by a month-to-month tenant, and the resulting tenancy at sufferance, is conceptually and legally distinguishable from abandonment of premises by a tenant during the regular lease term in derogation of the express oral or written lease agreement.
Next, the magistrate found that appellee was not responsible for damages to the door, deeming it an "act of God." We discern no reason to disturb this factual finding based on the de minimis
evidential predicate in this case.
Finally, based on appellee's testimony, the court determined the amount paid by appellee for the light fixture, $143.68, subtracted the actual cost of the light fixture, $83.68, and rendered judgment for appellee in the amount for $60. Again, based on the meager evidential table before this court, consisting of the facts stated in the magistrate's decision and the pertinent portion of appellants' brief, we believe that this conclusion is substantiated, and the trial court did not abuse its discretion in adopting this factual finding.
In conclusion, the magistrate's decision is supported by sufficient competent, credible evidence, and comports with the applicable statutory and case law. Thus, the trial court properly adopted the magistrate's decision and awarded $60 to appellee, and also properly concluded that appellants were not due any other monetary damages.
Accordingly, appellants' assignments of error are without merit. The judgment of the trial is affirmed.
DONALD R. FORD, PRESIDING JUDGE.
CHRISTLEY, J., concurs in judgment only.
NADER, J., concurs.
[1] The name and signature on the lease are shown as "Anna M. Simondis."
[2] Both parties appear pro se in the instant appeal. Appellee has not submitted a brief for our review. Therefore, we accept appellants' statement of the facts and issues as correct. App.R. 18(C).
[3] Anice L. Jones' name appears on the lease agreement; however, she was not named as a party in the instant case.
[4] Warren Municipal Court Case Number 97-CVI-00187. Appellee's initial complaint was filed on January 17, 1997, seeking judgment in the amount of $670.
[5] The magistrate's report lists the total damages sought as $710.
[6] We note that the trial court also adopted the recommendation of the magistrate to "dismiss" appellants' counterclaim. The most appropriate disposal of appellants' counterclaim by the trial court would have been to have granted judgment on the claim, rather than to have "dismissed" the claim.
[7] In Sea Lakes, Inc., we interpreted the language in former Civ.R. 53(E)(4).
[8] Although we do not have a transcript to indicate whether the lease agreement was received into evidence, the lease is contained in the trial court record. "Therefore, we may take note of the terms of the lease on the issue of responsibility for payment of utilities." Wilhelm v. Ison (Mar. 15, 1993), Greene App. No. 92-CA-97, unreported, at 3, 1993 WL 76961.